[Cite as *Casper v. Casper*, 2013-Ohio-4329.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


WILMA LEE CASPER,                            :

      Appellee/Cross-Appellant,         :

                                  :

  - vs -

                                    :

PAUL W. CASPER, JR.,                         :

      Appellant/Cross-Appellee.         :

CASE NOS.  CA2012-12-128
CA2012-12-129

O P I N I O N
9/30/2013


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 12DR35271


John D. Smith Co., LPA, John D. Smith, Andrew P. Meier and Mark D. Webb, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellee/cross-appellant

Robbins, Kelly, Patterson & Tucker, Barry A. Spaeth, Mary M. Sherman and Rina R. Russo, 7 West Seventh Street, Suite 140, Cincinnati, Ohio 45202, for appellant/cross-appellee


**M. POWELL, J.**

{¶ 1} Appellant/cross-appellee, Paul W. Casper, Jr. (husband), appeals from a judgment of the Warren County Court of Common Pleas, Domestic Relations Division, granting the parties a divorce. Appellee/cross-appellant, Wilma Lee Casper (wife), cross-appeals from the same judgment. For the reasons that follow, we affirm in part and reverse in part the judgment of the domestic relations court and remand this matter for further

proceedings.

{¶ 2}   Husband and wife were married on June 28, 1988.  After 23 years of marriage, the parties separated on October 7, 2011 when wife left the marital residence.  The trial court adopted the separation date as the date the marriage terminated.  On January 23, 2012, wife filed a complaint for divorce.  Husband is a 65-year-old attorney for a large law firm (the law firm).  Husband earned an annual average of $392,133 for the three years preceding 2012 from his employment with the law firm as an equity partner.  This income included law firm partnership distributions and a 401k distribution husband received at various times during the year based upon the prior year's performance (the partnership distributions and the 401k distribution that husband received in 2012 based upon his 2011 performance shall hereinafter be referred to collectively as the distributions).  Soon after their separation, husband changed his employment status with the law firm from an equity partner to a contract partner of the law firm.  As a contract partner, husband's annual income was reduced to $300,000 per year.  Wife is 64 years old and works four days a week as a legal secretary and business manager for a different law firm.  Wife had an annual income of $27,228 plus an annual health insurance reimbursement of $8,784 from her employment.  Prior to the parties' marriage, wife owned residential property located on Lemcke Road in Beavercreek, Ohio (Lemcke Road).  During the marriage Lemcke Road was sold and the parties purchased another residence on Old Forest Lane in West Chester, Ohio (Old Forest).  No children were born as issue of the marriage.

{¶ 3}   The magistrate rendered a decision regarding temporary orders on March 30, 2012, which was adopted by the trial court, ordering husband to pay wife $8,721 a month in spousal support beginning April 1, 2012.  A final divorce hearing was held before the magistrate on June 28, 2012.  In the magistrate's decision issued on September 14, 2012, the magistrate made various findings regarding property division, the parties' income, and

spousal support. The magistrate granted wife a $52,618.67 separate property interest in Old Forest because wife was able to trace this amount from the proceeds of the sale of Lemcke Road. The magistrate also divided husband's 2011 partnership distribution (which was paid to husband in 2012) from the law firm based on the number of days the parties were married during 2011 (i.e., January 1, 2011 through October 7, 2011). The magistrate found that 280/365 of husband's 2011 partnership distribution should be classified as marital property. While finding husband's reduction in annual income to $300,000 by becoming a contract partner after the parties' separation "suspect," the magistrate declined to impute additional income to husband because retirement was consistent with his age. The magistrate found that there was no reason why wife could not work five days a week and imputed a total income of $42,819 to wife, including a reimbursement for health insurance.

{¶ 4} The magistrate ordered husband to pay wife spousal support of $8,570 each month for a period of 106 months. Husband was to receive credit for the spousal support paid under the temporary order during this time. The court retained jurisdiction over the amount of spousal support, but not its duration. The magistrate recognized that husband would retire in the near future, but would not speculate as to his income after retirement. The magistrate also found that it would be inequitable for wife not to receive spousal support for the period of time between when the parties separated on October 7, 2011 and the date that temporary spousal support was ordered (i.e., April 1, 2012). The magistrate offset the spousal support award during this period with the cost of half of the attorney fees incurred by husband during pre-filing settlement negotiations.

{¶ 5} Both husband and wife filed objections to the magistrate's decision. The trial judge overruled in part and sustained in part the magistrate's decision on November 19, 2012. However, the trial judge overruled all objections related to this appeal. The final divorce decree was issued on December 12, 2012. Husband timely appeals and raises three

assignments of error for review. Wife timely cross-appeals and raises three cross-assignments of error for review. We first address husband's assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE WARREN COUNTY, OHIO DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE OR CONTRARY TO LAW IN MAKING ITS FINDINGS IN THE FINAL DECREE OF DIVORCE.

{¶ 8} Husband presents three issues in his first assignment of error. First, husband argues the trial court abused its discretion in classifying the net sale proceeds from the sale of Lemcke Road as wife's separate property. Second, husband asserts the trial court erred in failing to take into account in the property division several deposits made into wife's Fifth Third Bank checking account, which he dubs "mystery money." Finally, husband contends the trial court abused its discretion by utilizing a ratio based on calendar days to determine whether his law firm distributions should be classified as his separate property or as marital property. We will address each issue in turn.

1. Lemcke Road

{¶ 9} Husband argues that the trial court abused its discretion in awarding wife $52,618.67 in separate property. The trial court found that the money consists of the net sale proceeds from Lemcke Road. It is undisputed that wife owned Lemcke Road prior to the parties' marriage. Husband first argues that wife gifted him an undivided one-half interest in Lemcke Road and thus should not have been awarded a separate interest in its proceeds. Alternatively, husband argues that wife failed to adequately trace her separate property interest from the Lemcke Road sale into Old Forest. Finally, husband argues that if we find that the trial court did not abuse its discretion in awarding wife $52,618.67 in separate property from the proceeds of Lemcke Road, he also should have been awarded a separate

interest.

### a. Gift

{¶ 10} Subsequent to the parties' marriage wife conveyed Lemcke Road to husband and herself by joint and survivorship deed.  Husband argues that this conveyance was a gift to him and transformed the net sale proceeds from Lemcke Road into marital property.

{¶ 11} "A trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence."  *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8.  As the Ohio Supreme Court has stated that the manifest weight standard is the same in both criminal and civil contexts, the weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.  "A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony."  (Internal quotation marks omitted.)  *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 10.

{¶ 12} The holding of a title to property in the name of both spouses does not, by itself, determine whether a property is marital or separate.  R.C. 3105.171(H); *Kohus v. Kohus*, 12th Dist. Clermont No. CA2002-07-055, 2003-Ohio-2551, ¶ 21.  Separate property includes real or personal property that was acquired by one spouse prior to marriage.  R.C. 3105.171.  One of the more commonly recognized means to convert separate property into marital property is through an inter vivos gift.  *Golick v. Golick*, 12th Dist. Clermont No. CA99-05-040, 2001 WL 1598290, *6 (Dec. 17, 2001).  The essential elements of an inter vivos gift are (1) intent of the donor to make an immediate gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee.  *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936),

paragraph one of the syllabus. "It is well-established that the donor is not required to introduce evidence that he did not intend for his separate property to be commingled into marital property. Rather, the donee has the burden of showing by clear and convincing evidence that the donor intended an inter vivos gift." (Citations omitted.) *Golick* at *6. "The existence of an inter vivos gift is ordinarily a question of fact." *In re Estate of Lilley*, 12th Dist. Warren No. CA2005-08-091, 2006-Ohio-5510, ¶ 30; *Leon v. Caroselli*, 1st Dist. Hamilton Nos. C-960364 and C-960612, 1997 WL 266761, *2 (May 21, 1997). As to questions of fact, we give deference to the trial court, which is best able to observe the witnesses and weigh the credibility of their testimony. *Lilley* at ¶ 30.

{¶ 13} The parties stipulated that at the time of marriage wife owned Lemcke Road. The only evidence presented besides the deed showing that husband and wife held Lemcke Road as joint tenants with rights of survivorship, was conflicting testimony of husband and wife. Husband testified: "We were married we were together, we were in this for the duration. So, everything that was mine was hers and everything that was hers was mine." In contrast, wife testified that she put husband's name on the deed because he had asked her to because he was paying some expenses and in order to "protect himself." Husband's testimony did not address with any specificity the issue of whether the conveyance of Lemcke Road into a joint and survivorship tenancy was intended by wife as a gift. There was no evidence of any declarations of wife that she intended the conveyance of Lemcke Road to husband as a gift. In fact, there was no testimony concerning any discussions of the parties relating specifically to the conveyance of Lemcke Road from wife to husband and wife as joint and survivorship tenants. Additionally, there are reasons why wife may have conveyed Lemcke Road to husband other than as a gift. It may have been conveyed in an effort to placate husband and honor his request that wife transfer the property into both of their names. It may have been to protect husband in the event wife predeceased him and to

provide him with a place to live, as wife had a child from a previous marriage who might claim an interest in Lemcke Road in such an event.[1]

{¶ 14} Based upon this meager and equivocal evidence, the trial court evidently determined that husband had failed to establish by clear and convincing evidence that wife had intended to make a gift of an undivided one-half interest in Lemcke Road. Because whether an inter vivos gift occurred is a question of fact and the trial court is in the best position to observe witnesses and weigh credibility, we hold that the trial court's determination was not against the manifest weight of the evidence. *See Smith v. Emery-Smith*, 190 Ohio App.3d 335, 2010-Ohio-5302, ¶ 30-40 (11th Dist.); *O'Grady v. O'Grady*, 11th Dist. Trumbull No. 2003-T-0001, 2004-Ohio-3504, ¶ 70-73; *Needles v. Needles*, 11th Dist. Geauga No. 2001-G-2386, 2002-Ohio-7128, ¶ 20-23; *Golick* at *6.

b. Tracing separate property

{¶ 15} Husband argues that wife failed to adequately trace the $52,618.67 netted from the sale of Lemcke Road into the purchase of Old Forest in order for this sum to be classified as her separate property.

{¶ 16} The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 9. In this case, wife had the burden of proof by a preponderance of the evidence to show that a portion of the down payment for the purchase of Old Forest was from the net sale proceeds of Lemcke Road. In determining that wife met her burden of proof, the trial court relied on the settlement statements from the closings on the sale of Lemcke Road and the purchase of

---

1. The record reflects that wife testified that she had not engaged in any estate planning. However, this testimony was on cross-examination and was separate from any testimony concerning the conveyance of Lemcke Road. The record does not reflect whether wife would have considered a conveyance of Lemcke Road into a joint and survivorship tenancy as "estate planning."

Old Forest. The closings occurred on successive days. The proceeds received from Lemcke Road totaled $52,618.67. Husband stated that $17,381.33 of the down payment on Old Forest came from his emergency savings account. The two amounts equal the down payment for the purchase of Old Forest. Given the timing and the component amounts of the down payment, the greater weight of evidence supports the trial court's finding that wife traced her separate interest from the net sale proceeds of Lemcke Road into the purchase of Old Forest.

### c. Husband's separate property interest

{¶ 17} Husband argues that if wife has a separate interest in Lemcke Road, he should be awarded a separate property interest of $10,000 for a mortgage payment he made towards Lemcke Road, $17,381.33 that he contributed to the down payment of Old Forest, and the cost of certain expenses he paid toward Lemcke Road prior to its sale.

### i. $10,000 "mortgage" payment

{¶ 18} Husband argues that he should be credited $10,000 for a mortgage payment made to wife's former husband. The only evidence presented in this regard was husband's testimony that "I did pay off the remaining mortgage, I recall that, which was about $10,000, if I recall correctly." In his brief, husband states that the $10,000 payment was to wife's former husband, apparently as part of some sort of settlement agreement. Husband's testimony was the only reference to such a mortgage. This testimony is also in direct contradiction to wife's testimony that the monthly mortgage payment was $232 and the mortgage was paid off at the time of the sale of Lemcke Road.

{¶ 19} As stated above, a party seeking to have an asset classified as separate property bears the burden of establishing such by a preponderance of the evidence. *Zollar* at ¶ 9. Husband presented no evidence as to when the $10,000 payment was made or the source of the funds used to make the payment. For instance, it would be critical to this

determination if any of the funds arose from husband's earnings during the marriage as such would be marital property as opposed to husband's separate property. R.C. 3105.171(A)(3)(iii). Additionally, there is uncertainty as to the amount and nature of the payment. Husband's testimony on the subject was equivocal. Husband seemed uncertain as to the exact amount he paid. There is also ambiguity as to the nature of any such payment made by husband. Husband's testimony characterizes the payment as a mortgage. But, in his brief husband argues that "[his] payment to [wife's] former husband *could be construed as a payment towards the equity in the Lemcke property.*" (Emphasis added.) Husband's brief also refers to the payment as for a "mortgage," always placing the word mortgage in quotation marks.

{¶ 20} These factors, in conjunction with the testimony, raise questions as to whether any such payment actually discharged a lien upon Lemcke Road so as to give husband an interest in Lemcke Road. Based upon the foregoing and the superior position of the trial court to weigh the credibility of the testimony, the trial court's refusal to credit husband with a separate property interest in Lemcke Road based upon any possible $10,000 payment made by husband to wife's former husband was not against the manifest weight of the evidence.

ii. $17,381.33 towards down payment on Old Forest

{¶ 21} Husband argues that he should be awarded a separate property interest of at least $17,381.33 based on his uncontroverted testimony that this amount came from his Smith & Schnacke emergency savings account and contributed towards the down payment on Old Forest. We cannot see how this amount affects wife's separate property interest in the net sale proceeds from Lemcke Road. The payment of this amount by husband from his separate property as part of the down payment on Old Forest would serve to give him a separate property interest in Old Forest. Consequently, this would reduce wife's marital interest in Old Forest. However, it has no effect on the amount of wife's separate interest in

Old Forest attributable to her contribution of the net sale proceeds from Lemcke Road to the Old Forest down payment. This assignment of error claims that the trial court erred by awarding wife a separate property interest in Old Forest. Husband did not assign as error the trial court's failure to award husband a separate property interest based upon his contribution to the down payment. Therefore, the issue of whether husband has a separate property in Old Forest is not properly before us.

### iii. Payment of expenses

{¶ 22} In his reply brief, husband asserts for the first time on appeal that he paid certain household expenses, including the monthly mortgage payment, for Lemcke Road prior to its sale. An appellant may not use a reply brief to raise new issues. *Baker v. Meijer Stores Ltd. Partnership*, 12th Dist. Warren No. CA2008-11-136, 2009-Ohio-4681, ¶ 17. Accordingly, this issue is not properly before us. Even if we were to consider this issue, there was conflicting testimony as to the amount husband contributed. Husband produced no cancelled checks or other evidence to substantiate his testimony. The record does not reflect the source of the funds used by husband to make the payments, thus rendering impossible a determination as to whether his contributions were from his separate property or from marital property. As regards to any monthly mortgage payments made by husband, there is no evidence as to what reduction in the principal balance of the mortgage resulted so as to permit a quantification of any interest husband acquired in Lemcke Road. Again, it is the role of the trier of fact to weigh the testimony and credibility of the witnesses and to resolve any disputes of fact inherent in the testimony. Therefore, the trial court's determination that the proceeds from Lemcke Road were wife's separate property was not against the manifest weight of the evidence.

{¶ 23} In light of the foregoing, we find that the trial court did not err in granting wife $52,618.67 in separate property arising from the proceeds of the sale of Lemcke Road.

Husband's first argument in his first assignment of error is overruled.

### 2. Fifth Third Bank deposits ("mystery money")

**{¶ 24}** Husband argues that the trial court erred by failing to account for $17,995.15 in its property division, which husband dubs "mystery money." We find merit in this assertion.

**{¶ 25}** As stated above, "[a] trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence." *Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, at ¶ 8. The $17,995.15 is comprised of three deposits made into wife's Fifth Third Bank checking account in the amounts of $2,196.05 and $6,772.50 on November 1, 2011 and $9,026.60 on November 4, 2011. The trial court attributed the "mystery money" to wife's October and November 2011 paychecks and an investment account withdrawn by wife after separation valued at $14,626.89 as of October 7, 2011 and $16,089.58 at the time of the closing of the account. However, the trial court's determination that the money from the investment account is the same as the $17,995.15 deposited in wife's Fifth Third Bank checking account is contrary to wife's own testimony and argument on appeal. When questioned at the hearing regarding the deposits, wife responded that she did not remember from where the money originated. In her brief on appeal, wife claims that the source of the funds was mostly payments from husband, including funds from the parties' 2010 joint tax return, payments for rent, and a payment towards a portion of an American Express bill. There does not appear to be a consensus between husband, wife, or the court regarding the source of the "mystery money." However, neither husband nor wife attribute the source of the funds to the investment account. Furthermore, it is not apparent from the record how the trial court determined that the "mystery money" consisted of the investment account and wife's October and November 2011 paychecks.

**{¶ 26}** Consequently, we find that the trial court's finding that the source of the

"mystery money" is from the investment account is against the manifest weight of the evidence. As such, the "mystery money" should have been included in the property division as marital property and divided between the parties. Husband's second argument in his first assignment of error is sustained.

### 3. Calendar-based ratio

{¶ 27} Husband argues that the trial court abused its discretion by utilizing a ratio based on calendar days to classify a portion of his 2011 law firm distributions as marital property. Specifically, husband argues that the use of the 280/365 ratio for determining the marital property portions of the distributions was not supported by the evidence because the distributions were attributable to his performance after the October 7, 2011 termination of the marriage. Therefore, husband argues that the entire amount of the distributions should have been designated as his separate property.

{¶ 28} When dividing property in a divorce proceeding, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). After determining whether the assets are separate or marital property, the trial court must then disburse a spouse's separate property to that spouse, and divide the marital property equally between the spouses unless the court finds that an equal division would be inequitable. R.C. 3105.171(C)(1), (D); *Roberts v. Roberts*, 12th Dist. Clinton No. CA2012-07-015, 2013-Ohio-1733, ¶ 34. The trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of that discretion. *Roberts* at ¶ 34. R.C. 3105.171(A)(3)(a)(iii) states that marital property includes "all income * * * due to labor of either spouse *that occurred during the marriage.*" (Emphasis added.)

{¶ 29} There is no dispute that the distributions were attributable to husband's performance with the law firm during 2011. However, husband argues that the distributions were entirely attributable to his performance post October 7, 2011. In support of this claim,

- 12 -

husband alludes to exhibit C to Defendant's Exhibit MM. This exhibit breaks down husband's individual share of the law firm's net income for 2011 into what the exhibit refers to as calendar "quarters." Because the fourth calendar quarter of 2011 would be October through December and because the marriage termination date has been fixed at October 7, 2011, husband claims that the distributions should be designated as his separate property. This argument suffers from two fatal deficiencies. First, the record does not reflect that the distributions were attributable only to the "fourth quarter" as opposed to all of 2011. Second, the "fourth quarter" set forth upon the exhibit is not a calendar quarter but a calendar third as it encompasses September through December 2011 as opposed to only October through December 2011. Because it is not apparent what portion of the net income attributed to the "fourth quarter" was earned from September 1, 2011 through October 7, 2011, the trial court was left with the task of determining an equitable manner in which to allocate the earnings as marital or separate property.

{¶ 30} The trial court found that it would not be equitable to classify the distributions based on when they were paid. Rather, the trial court found it equitable to classify the distributions based on the number of calendar days that had elapsed during the year prior to the date the parties' marriage terminated. The trial court recognized that the date husband was paid the distributions was not the same date as when they were earned. Utilization of a 280/365 ratio based on the number of days the parties were married during 2011 to calculate the marital portion of the distributions was not an abuse of discretion. Husband's third argument in his first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE WARREN COUNTY, OHIO DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION IN MAKING ITS FINDINGS IN THE FINAL DECREE OF DIVORCE REGARDING SPOUSAL SUPPORT.

{¶ 33} Husband argues that the trial court abused its discretion in awarding wife $51,420 in spousal support for the period of October 7, 2011, the date of the termination of the marriage, to April 1, 2012, the date a temporary spousal support order went into effect. Husband also argues that the trial court abused its discretion in awarding wife $8,570 a month in temporary spousal support beginning April 1, 2012.[2] Finally, husband argues that the trial court abused its discretion in awarding wife spousal support in the amount of $8,570 for a period of 106 months.

{¶ 34} "It is well-established that a trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 27; *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). In turn, "absent an abuse of discretion, a spousal support award will not be disturbed on appeal." *Ohmer* at ¶ 27, quoting *Hutchinson v. Hutchinson*, 12th Dist. Clermont No. CA2009-03-018, 2010-Ohio-597, ¶ 16. An abuse of discretion is more than error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 35} In regard to the award of spousal support for the period of October 7, 2011 to April 1, 2012, husband specifically argues that the amount of spousal support awarded to wife of $51,420 was outside the specific purpose of Civ.R. 75(N) to provide "sustenance and expenses." Additionally, husband argues that there was no factual basis to make the award because the trial court failed to take into account certain payments husband made to wife during this period of time.

---

2. Husband argues in his brief that the trial court abused its discretion in awarding wife $8,570 a month in temporary spousal support. However, the trial court actually awarded wife $8,721 a month in temporary spousal support. In either case, our conclusion is the same.

{¶ 36} Civ.R. 75(N) states that the purpose of spousal support pendente lite is for "sustenance and expenses." Husband argues that temporary spousal support should be a lesser amount because the language of Civ.R. 75(N) provides a substantively different and narrower standard, than the standard for spousal support provided for by R.C. 3105.18. R.C. 3105.18(A) defines "spousal support" as being for "sustenance and for support of the spouse." We find there is no substantial difference in the purposes of temporary spousal support under Civ.R. 75(N) and spousal support under R.C. 3105.18.

{¶ 37} It is vital to note that husband admits changing or cancelling almost all of the parties' joint accounts beginning on October 7, 2011, effectively cutting wife off from marital assets. Additionally, the parties maintained a high standard of living throughout their marriage. Wife testified that husband paid her sporadically for rent for a few of the months between October 7, 2011 and March 31, 2012. Additionally, wife testified that husband paid her health and automobile insurance during this period. Husband's Exhibit Z outlines the amounts husband claims he paid to wife between October 7, 2011 and March 31, 2012, which totals $15,847. Wife disputes some of the items on husband's list of expenses, including a $7,000 American Express bill paid on November 3, 2011. Husband admittedly removed his name from the American Express card on October 7, 2011. Additionally, wife disputes a $2,695 payment claimed to be made by husband from an equity line of credit to pay for a Fifth Third Bank account overdraft held in wife's name. Husband admits that there is no record for the payment, but insists he placed the check in the mail.

{¶ 38} There is conflicting evidence as to the amount of payments husband made to wife during this period. Considering the disputed amounts, husband's support of wife is relatively minimal for the entire six-month period. As the trial court is in the best position to review conflicting evidence and evaluate the credibility of the witnesses and given the parties' standard of living, the trial court did not abuse its discretion in awarding wife $51,420, or

$8,570 per month, in spousal support for sustenance and expenses for the period between October 7, 2011 and April 1, 2012.

{¶ 39} Regarding the award of temporary spousal support beginning April 1, 2012 and for spousal support ordered to begin the same date for the duration of 106 months, husband argues that the trial court abused its discretion because the trial court failed to consider the factors outlined in R.C. 3105.18(C)(1).[3] Specifically, husband argues that the trial court failed to consider his imminent retirement, his health, that it is a second marriage for both parties, wife's need, and the relative assets and liabilities of the parties. At the outset, we note that under R.C. 3105.18, there is no requirement that the trial court make specific findings of fact regarding its award of spousal support. *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 13. In addition, if a magistrate has not prepared findings of fact or has prepared findings of fact that are insufficient, the burden is on the party objecting to request findings of fact from the magistrate pursuant to Civ.R. 52 and 53(D)(3)(a)(ii). *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF040031, 2011-Ohio-3041, ¶ 15. *See also Schenck* at ¶ 13. Thus, when a party does not request findings of fact and conclusions of law, we will presume that the trial court considered all the factors listed in R.C. 3105.18 and all other relevant facts. *Carman v. Carman*, 109 Ohio App.3d 698 (12th Dist.1996), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 356 (1981).

{¶ 40} R.C. 3105.18(C)(1) contains 14 factors that the trial court must consider in determining if spousal support is appropriate. *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 8. Additionally, "[n]eed is but one factor among many that the trial court may consider in awarding reasonable and appropriate spousal support." *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 42.

---

3. In making its final spousal support order, the trial court ordered that husband be given credit for the amount of spousal support paid to wife under the temporary order.

{¶ 41} R.C. 3105.18(C)(1) states that the following should be considered:

(a)  The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b)  The relative earning abilities of the parties;

(c)  The ages and the physical, mental, and emotional conditions of the parties;

(d)  The retirement benefits of the parties;

(e)  The duration of the marriage;

(f)  The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g)  The standard of living of the parties established during the marriage;

(h)  The relative extent of education of the parties;

(i)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j)  The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k)  The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l)  The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n)  Any other factor that the court expressly finds to be relevant and equitable.

{¶ 42} In this case, the trial court specifically stated that it considered the factors in

R.C. 3105.18 in determining an award of spousal support. Additionally, it does not appear husband ever requested findings of fact or conclusions of law. We presume the trial court considered such factors. Furthermore, many of the factors the trial court either explicitly or implicitly addressed. Husband states that the trial court considered the parties' income as well as the duration of the marriage, which lasted 23 years. The trial court recognized that husband's annual income is $300,000 per year and imputed a total income of $42,819 to wife. The trial court also took into consideration the ages and the physical, mental, and emotional conditions of the parties. The trial court did not impute husband's average earnings over the past three years of $392,133 due to his age being consistent with retirement and imputed full-time hours to wife. The trial court also explicitly addressed the parties' standard of living during the marriage, describing it as "a well-to-do lifestyle."

{¶ 43} The trial court addressed many of the remaining factors implicitly. The trial court considered the retirement benefits and relative assets and liabilities of the parties in its property division. Additionally, the trial court considered the relative education of the parties with the amount of spousal support it awarded. The majority of the residual factors are not relevant in this situation (e.g., the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home or the contribution of either party to the education of the other party).

{¶ 44} Accordingly, a review of the record indicates that the trial court heard the testimony of the parties and considered the pertinent factors of R.C. 3105.18(C)(1) in making its spousal support determination. We do not find that the trial court abused its discretion in this matter.

{¶ 45} Husband's second assignment of error is overruled.

{¶ 46} Assignment of Error No. 3:

{¶ 47} THE WARREN COUNTY, OHIO DOMESTIC RELATIONS COURT ABUSED

ITS DISCRETION IN FAILING TO ALLOW [HUSBAND] TO INTRODUCE CERTAIN EVIDENCE AND TESTIMONY.

{¶ 48} Husband argues that the trial court abused its discretion by refusing to allow him to introduce evidence regarding wife's illicit affairs. Specifically, husband argues that such evidence relates to wife's credibility and propensity for truthfulness.

{¶ 49} Under Evid.R. 608(B), counsel cannot challenge a witness' credibility with evidence of bad moral character. *Weidner v. Blazic*, 98 Ohio App.3d 321, 327 (12th Dist.1994). Counsel may, however, inquire "on cross-examination of the witness * * * concerning the witness's character for truthfulness or untruthfulness." Evid.R. 608(B). The decision to admit prior misconduct under Evid.R. 608(B) is a matter that rests within the sound discretion of the trial court. *Weidner* at 327. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 50} In this case, husband argues on appeal that evidence regarding wife's affairs is relevant to her propensity for truthfulness. However, when husband's counsel inquired into wife's affairs at the trial court level, wife's counsel objected. When asked how such an inquiry was relevant, husband's counsel responded by stating that the inquiry was relevant to the date of the end of the marriage. The trial court sustained the objection. Husband's counsel stated that it would proffer evidence relating to wife's affairs at the end of the hearing. However, at the end of the hearing, counsel withdrew the proffer. Consequently, husband waived any credibility argument on appeal as it is impossible to review whether the evidence was relevant to wife's character for truthfulness. Furthermore, husband has not preserved this issue for appeal as he now argues a different basis for admissibility of the evidence than was advanced at the hearing (i.e., relevant to wife's propensity for truthfulness versus relevant to the termination date of the marriage). Given the trial court's discretion in

admitting prior misconduct of a witness, and the fact that husband did not proffer evidence regarding wife's truthfulness, the trial court's decision to exclude this evidence was not unreasonable, arbitrary, or unconscionable. Finally, this argument was not properly preserved for appeal.

{¶ 51} Husband's third assignment of error is overruled.

{¶ 52} We now turn to wife's cross-assignments of error.

{¶ 53} Cross-assignment of Error No. 1:

{¶ 54} THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING HUSBAND'S INCOME AT $300,000.00 FOR SPOUSAL SUPPORT PURPOSES.

{¶ 55} Wife argues that because husband voluntarily reduced his income, the trial court abused its discretion by setting husband's income at $300,000. Specifically, wife argues that because husband's income decreased from an average of almost $400,000 per year as an equity partner at the law firm to $300,000 as a contract partner, the trial court should have imputed additional income to husband consistent with his income in the past.

{¶ 56} "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a person could have earned if he made the effort." *Brown v. Brown*, 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 59. "Therefore, a court may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." *Moore v. Moore*, 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 66. Whether a party is voluntarily unemployed or underemployed is "a factual determination to be made by the trial court based on the circumstances of each particular case," and that decision should not be disturbed absent an abuse of discretion. *Rotte v.*

*Rotte*, 12th Dist. Butler No. CA2004-10-249, 2005-Ohio-6269, ¶ 14, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993).

{¶ 57} In this case, the trial court recognized that husband's current income as a contract partner is $300,000. It also recognized that husband became a contract partner after the parties' separation and previously earned an average of $392,133. However, the trial court acknowledged that husband's age of 65 is consistent with retirement and that he may be reducing his income in preparation. As such, it declined to impute the higher average income to husband. Given the trial court's consideration of husband's income and age, it was not an abuse of discretion failing to impute a higher income to husband.

{¶ 58} Wife's first cross-assignment of error is overruled.

{¶ 59} Cross-assignment of Error No. 2:

{¶ 60} THE TRIAL COURT ERRED IN ALLOCATING ONE-HALF RESPONSIBILITY FOR ATTORNEY FEES INCURRED BY HUSBAND PRIOR TO THE FILING FOR DIVORCE.

{¶ 61} In her second cross-assignment of error, wife argues the trial court abused its discretion in off-setting an award of temporary spousal support by one-half of the attorney fees incurred by husband during settlement negotiations. Specifically, wife argues that the trial court abused its discretion awarding husband attorney fees because he failed to produce statements, itemized bills, or affidavits regarding the attorney fees. The only evidence presented as to the amount was husband's own testimony that the amount of the attorney fees was in "excess of $12,000."

{¶ 62} "It is well-established that an award of attorney fees is within the sound discretion of the trial court." *Foppe v. Foppe*, 12th Dist. Warren No. CA2010-06-056, 2011-Ohio-49, ¶ 34, quoting *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985). An abuse of discretion

is more than an error of law; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore*, 5 Ohio St.3d at 219.

{¶ 63} R.C. 3105.73(A) governs whether attorney fees should be awarded in a divorce action and provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 64} In this case, the trial court complied with R.C. 3105.73 by finding an award of attorney fees to husband equitable. From husband's testimony, the trial court found that husband spent $12,000 in attorney fees. The incurrence of attorney fees happened after the date of the parties' separation, but before the effective date of temporary spousal support. The trial court found that it would be inequitable if wife was not granted spousal support during this period and found it equitable for wife to share in the attorney fees during the period of negotiations. In ordering wife to pay a portion of the attorney fees, the trial court noted the attorney fees were a significant expense that occurred prior to filing for divorce that benefitted both parties as they tried to negotiate a settlement. Consequently, the trial court did not abuse its discretion in finding the award of attorney fees equitable.

{¶ 65} Wife's specific argument on appeal, however, pertains to the sufficiency of the evidence to determine whether the amount of attorney fees awarded was reasonable. Regarding the amount, husband testified that he paid $12,000 in attorney fees for pre-filing negotiations. In her objection to the magistrate's decision, wife essentially argued that the award of attorney fees to husband was inequitable because husband is an attorney and wife is a "mere legal secretary." Because wife did not specifically raise the reasonableness of

attorney fees in her objection below, we need not address it on appeal. *See* Civ.R. 53(D)(3)(b)(iv); *Homme v. Homme*, 12th Dist. Butler No. CA2010-04-093, 2010-Ohio-6080, ¶ 75.

{¶ 66} Wife's second cross-assignment of error is overruled.

{¶ 67} Cross-assignment of Error No. 3:

{¶ 68} TO THE EXTENT THAT THIS COURT MODIFIES TEMPORARY SUPPORT THE RETROACTIVE VALUATION DATE OF OCTOBER 7, 2011 IS INEQUITABLE.

{¶ 69} Because we did not modify temporary spousal support, wife's third cross-assignment of error is moot.

{¶ 70} Judgment affirmed in part, reversed in part, and remanded for further proceedings in accordance with the law and consistent with this opinion.

HENDRICKSON, P.J., and PIPER, J., concur.