[Cite as *Sorrentino v. Louis*, 2024-Ohio-4957.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| PETER A. SORRENTINO, | : | |
| Appellant, | : | CASE NO. CA2024-03-047 |
| | : | O P I N I O N |
| - vs - | | 10/15/2024 |
| | : | |
| TONI KIMBERLY LOUIS, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR23-02-0111

Smith, Meier & Webb, LPA, and John D. Smith and Andrew P. Meier, for appellant.

The Lampe Law Office, and M. Lynn Lampe and Sloan Thacker, for appellee.

**HENDRICKSON, J.**

{¶ 1} Appellant, Peter Sorrentino ("Husband"), appeals the judgment of the Butler County Court of Common Pleas, Domestic Relations Division, finding Husband's assignment of his life insurance policy to Appellee, Toni Louis ("Wife"), was an irrevocable inter vivos gift of nonmarital property.

{¶ 2} Husband and Wife married in February of 2020. They had lived together

prior to their marriage for several years. Before they married, Husband purchased a life insurance policy on himself in November of 2006. The policy holds small cash value, but pays a $1,000,000.00 benefit to the designated beneficiary upon Husband's death. The policy's annual premium is $27,540.00.

**{¶ 3}** Husband struggled with cancer throughout the marriage. In May 2022, Husband moved out and filed for divorce in August 2022. At that point, Husband's cancer was terminal, so he converted the policy from term to whole life. Husband also removed Wife as the beneficiary and instead named his daughter from another marriage as beneficiary.

**{¶ 4}** In a turn of events, the parties later sought to reconcile their marriage resulting in Husband dismissing the divorce proceedings in December of 2022. At that point, Husband contacted his insurance agent and reinstated Wife as the beneficiary of the policy. On December 22, 2022, Husband executed a document entitled "Life Insurance Absolute Assignment" to transfer ownership of the policy to Wife (the "Absolute Assignment"). Among other things, the document stated, "Use this form to name a new Absolute Assignee (Owner)," and Wife was designated as the sole assignee. Husband signed the Absolute Assignment again on December 29, 2022 after additional identifying information was added to the document.

**{¶ 5}** The parties' reconciliation efforts broke down after executing the Absolute Assignment. In February of 2023, Husband sent Wife an email asking her to return ownership and control of the policy. When Wife never responded, Husband refiled for divorce that same month.

**{¶ 6}** At the trial level, Husband argued the Absolute Assignment was not an unconditional gift of the policy to Wife. A final contested hearing was held on October 24, 2023. Husband and Wife both testified at the hearing. Husband asserted that during

their discussions for reconciliation of the marriage, Wife had three conditions: (1) she would be reinstated on the policy as the beneficiary; (2) she would be appointed as Husband's health care power of attorney; and (3) his daughter would be removed as executor of his estate.  Later, Wife purportedly demanded to be made the owner of the policy versus simply the beneficiary.

{¶ 7}   Wife denied she had any conditions to reconcile, and she testified she simply desired a "traditional marriage" with integrated finances and accounts that would provide her with more financial security in the event of his death.  Wife asserted it was Husband's idea to transfer the policy to her to alleviate her concerns regarding finances.

{¶ 8}   To support his own claims, Husband admitted into evidence handwritten notes and electronic messages between himself and Wife that referenced these alleged conditions.  However, during Husband's cross-examination, the following exchange took place:

> WIFE'S ATTORNEY: Okay.  So you meet with [your insurance agent] on December 22nd, correct?
>
> HUSBAND: Yes.
>
> WIFE'S ATTORNEY: And you had some conversation with [him] that day, correct?
>
> HUSBAND: We did.
>
> WIFE'S ATTORNEY: You and [Wife] both?
>
> HUSBAND: Yes.
>
> WIFE'S ATTORNEY: And the conversation was about the consequences of signing the document, correct?
>
> HUSBAND: No.  We simply executed the document and spent most of our time talking about the exhibits that he had sent her and trying to explain -- he was trying to help me explain to her why she needed to do this . . .
>
> WIFE'S ATTORNEY: So is it your testimony you didn't know

what you were signing that day or the consequences of it?

HUSBAND: I read the form as I signed it, and I knew it was an absolute assignment. Yes.

WIFE'S ATTORNEY: And what do you think absolute assignment means?

HUSBAND: It's a transfer of ownership of an insurance contract.

WIFE'S ATTORNEY: And what did you think the consequence of that was?

HUSBAND: I was giving up ownership of the policy.

WIFE'S ATTORNEY: To [Wife].

HUSBAND: To [Wife], in exchange for reconciliation.

WIFE'S ATTORNEY: Where did it say that on there? As a condition to you giving up ownership, she has to reconcile with me.

HUSBAND: It's not in the contract . . . It was our discussions leading into that.

Husband's insurance agent stated via affidavit that he advised Husband prior to executing the assignment that Husband would have no ownership of the policy and be giving up all rights in it once he signed the Absolute Assignment.

**{¶ 9}** In its January 2, 2024 order, the trial court found the assignment of the policy was an inter vivos gift. The trial court observed that Husband, a retired financial analyst, "possesses career knowledge of accounting, economics, money management, and security analysis." As a result, Husband, in the view of the trial court, "holds a proficient understanding of a variety of financial vehicles."

**{¶ 10}** The trial court pointed out that Husband initiated conversations with his insurance agent and specifically requested naming Wife as the owner and primary beneficiary of the policy. Before accomplishing this, Husband was explicitly advised on

the irrevocable consequence of such a change, and Husband even executed the Absolute Assignment twice after additional identifying information needed to be added.

{¶ 11} Citing these facts, the trial court found there was overwhelming evidence that Husband intended to make a gratuitous, voluntary transfer to Wife and that once Wife accepted the assignment, the gift was completed. Although Husband argued the Absolute Assignment was a conditional gift to Wife, the trial court deemed his reliance on his testimony and handwritten notes self-serving and noted that Husband never verbalized to Wife, his agent, or anyone else that the transfer was conditional. The trial court also found Wife's testimony credible that she imposed no conditions on Husband to reconcile the marriage. The trial court thus concluded the policy was Wife's separate property.

{¶ 12} On appeal, Husband raises a single assignment of error:

{¶ 13} THE TRIAL COURT ERRED IN FINDING THAT THE TRANSER [SIC] OF A LIFE INSURANCE POLICY FROM HUSBAND TO WIFE WAS AN INTER VIVOS GIFT.

{¶ 14} Husband argues that the evidence presented to the trial court established that the Absolute Assignment transferring ownership of the policy to Wife was conditioned upon the reconciliation of the parties' marriage.

{¶ 15} In divorce cases, the trial court must divide the couple's property with a two-step process. *Smith v. Smith*, 2023-Ohio-982, ¶ 28. First, the trial court must determine whether property is "marital property" or "separate property." *Id.*, citing R.C. 3105.171(B). (This distinction will be discussed further below.) Then, the trial court divides the property between the spouses. *Id.* at ¶ 29. Trial courts have great discretion on how to divide marital property, but a spouse's separate property typically remains in his or her exclusive possession. *Id.*, R.C. 3105.171(D).

{¶ 16} The crux of this case is whether the trial court properly categorized the

policy as Wife's separate property, meaning it remained in her exclusive possession during the couple's property division. On appeal, the trial court's classification of property will not be reversed unless it is against the manifest weight of the evidence. *Smith* at ¶ 28. That is, the trial court's findings must be "supported by competent and credible evidence." *Id.*

{¶ 17} Though not important to the legal question presented on appeal, "marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses . . . and that was acquired by either or both of the spouses during the marriage . . . ." R.C. 3105.171(A)(3)(a)(i). "'Marital property' does not include any separate property." R.C. 3105.171(A)(3)(b).

{¶ 18} In turn, "separate property" includes, but is not limited to (1) personal property "acquired by one spouse prior to the date of marriage" and (2) "[a]ny gift of any . . . personal property . . . that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(viii). *See also Casper v. Casper*, 2013-Ohio-4329, ¶ 12 (12th Dist.). "Clear and convincing evidence" is defined as a "degree of proof that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Nichols-Ross v. Ross*, 2009-Ohio-1723, ¶ 8 (12th Dist.). The donee has the burden of proving that the at issue property is separate. *Casper* at ¶ 12.

{¶ 19} Property may be gifted to an individual spouse, making it separate property, through an inter vivos gift. Ohio courts have long recognized that the elements of an inter vivos gift are:

> (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee *then and there*, and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift . . . with relinquishment of ownership, dominion, and control over

it.

(Emphasis added.) *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936), paragraph one of the syllabus.[1]

**{¶ 20}** Importantly, while "[m]any gifts are made for reasons that sour with the passage of time . . . the law does not allow a donor to recover or revoke a valid inter vivos gift simply because those reasons have soured." *Smith*, 2023-Ohio-982 at ¶ 51, citing *Dayal v. Lakshmipathy*, 2020-Ohio-5441, ¶ 37 (6th Dist.), *Cooper v. Smith*, 2003-Ohio-6083, ¶ 25 (4th Dist.). As a result, the Eighth District Court of Appeals has observed, "[t]he best approach is to treat gifts exchanged during marriage as absolute and irrevocable inter vivos gifts unless the donor-spouse has expressed an intent stated directly to the donee-spouse *at the actual time of gifting* that the gift is conditioned on the continuation of the marriage." (Emphasis added.) *Comella v. Comella*, 2008-Ohio-6673, ¶ 63 (8th Dist.).

**{¶ 21}** As observed by the trial court, "Husband's argument is much more complex than the facts reveal." Husband, a financial analyst with years of relevant experience, testified that he read the Absolute Assignment. He acknowledged it stated nowhere that the transfer was contingent upon successful reconciliation. Husband was also advised that after executing the assignment, he would have no further rights regarding the policy. Nonetheless, Husband signed the Absolute Assignment on two separate occasions. As a result, the facts clearly reveal that Husband irrevocably gifted the policy to Wife.

**{¶ 22}** Husband's testimony as to what was said between himself and Wife leading up to and after executing the assignment are self-serving at worst or simply irrelevant at

---

1. In more simple terms, "The essential elements of an inter vivos gift are (1) intent of the donor to make an immediate gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee." *Casper* at ¶ 12, citing *Bolles.*

best. Ultimately, there is no better evidence in this case of what Husband's intentions were *at the actual time of gifting* the policy to Wife than the Absolute Assignment itself.

{¶ 23} We have no doubt that assignment of the policy to Wife was part of an effort by the couple to salvage their marriage. However, the fact that effort was unsuccessful changes nothing. The record, specifically the Absolute Assignment, makes clear that assignment of the policy was not made expressly contingent on the parties reconciling at the time it was executed. Furthermore, Husband's insurance agent did not corroborate Husband's belief that the assignment was conditioned upon the parties' reconciliation. Therefore, we conclude the trial court's findings and judgment are not against the manifest weight of the evidence.

{¶ 24} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.