**GHAI, Appellee and Cross–Appellant,**

v.

**GHAI, Appellant and Cross–Appellee.**

[Cite as *Ghai v. Ghai*, 182 Ohio App.3d 479, 2009-Ohio-2449.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Nos. CA2008–09–089 and CA2008–10–091.

Decided May 26, 2009.

Judith L. Rauchman, for appellee and cross-appellant.

Christopher S. Cushman, for appellant and cross-appellee.

HENDRICKSON, Judge.

{¶ 1} Defendant-appellant and cross-appellee, Jennifer Ghai, appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, dividing property and awarding spousal support in a divorce case. Plaintiff-appellee and cross-appellant, Krishan Ghai, cross-appeals. For the reasons outlined below, we affirm in part, reverse in part, and remand.

{¶ 2} Jennifer and Krishan were married on November 22, 1997. The marriage produced no children. On April 16, 2007, Krishan filed a compliant in divorce. Following a final hearing, the magistrate released a decision on divorce on May 28, 2008. Both parties timely filed objections to the magistrate's

decision. In a ruling issued on July 22, 2008, the trial court sustained Krishan's objection as to the classification of the Subaru vehicle as a marital asset and also modified the magistrate's decision to reflect that the court retained jurisdiction over the spousal support award. The trial court affirmed the remainder of the magistrate's decision. The court issued a final divorce decree on August 29, 2008. Jennifer timely appeals, raising two assignments of error. Krishan cross-appeals, raising seven assignments of error.

{¶ 3} Appellate review of trial court determinations in domestic relations cases generally entails the abuse-of-discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. This standard is employed in reviewing orders relating to spousal support, child custody, and division of marital property. *Booth* at 144, 541 N.E.2d 1028. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." (Citation omitted.) Id. We are mindful of these considerations in addressing the following assignments of error.

{¶ 4} Assignment of Error No. 1:

{¶ 5} "The trial court erred by failing to award wife one-half of the appreciation in the marital residence."

{¶ 6} Jennifer disputes the trial court's conclusion that she was entitled to only one-half of the mortgage pay-down on the parties' marital residence at 5 Maple Leaf Drive ("marital residence") during the marriage. Jennifer argues that she should have been awarded one-half of the appreciation on the marital residence, less Krishan's down payment.

{¶ 7} In a divorce action, the trial court must classify assets as marital or nonmarital and equitably divide the property between the spouses in accordance with the provisions of R.C. 3105.171. R.C. 3105.171(B). "Marital property" includes all real or personal property or interest in real or personal property that was acquired by either or both of the spouses during the marriage, as well as all income and appreciation on separate property resulting from the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(a)(i) through (iii). Marital property is distributed either equally or equitably between the parties, subject to the circumstances and the discretion of the trial court. R.C. 3105.171(C)(1).

{¶ 8} Conversely, "separate property" includes any real or personal property or interest in real or personal property that was acquired by one spouse before the marriage, passive income and appreciation acquired from separate property by one spouse during the marriage, and gifts and inheritances. R.C. 3105.171(A)(6)(a)(i) through (iii), (vii). Separate property must be disbursed to its owner, unless the trial court chooses to make a distributive award from such property. R.C. 3105.171(D).

{¶ 9} The characterization of the parties' property is a factual inquiry and will not be reversed when supported by some competent, credible evidence. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

{¶ 10} Prior to trial, the parties stipulated to the following facts: The marital residence was purchased on December 23, 1996, approximately 11 months before the marriage. The purchase price was $136,000. Krishan tendered a down payment of $46,198.72 from his separate funds. The original mortgage was $91,000.

{¶ 11} The record reveals the following additional evidence: Krishan testified that he and Jennifer lived together in the marital residence prior to the marriage. The marital residence was deeded to "Krishan K. Ghai, an unmarried man and Jennifer Taylor, an unmarried woman." The marital residence was ordered to be sold by the court prior to trial. At trial, Krishan requested that he receive $46,198.72 for his down payment plus appreciation on that amount when the property sold, with the remainder of the proceeds divided between him and Jennifer.

{¶ 12} Krishan's testimony also revealed that the parties installed a pond on the property in the year 2000, using marital savings. The parties built a shed on the property around the year 2001 to house the wildlife on the property. Krishan testified that this shed was a gift from his parents.

{¶ 13} The magistrate's May 28, 2008 decision found that Krishan paid $46,198.72 from his separate funds and that any appreciation on the property during the marriage was passive because there was no evidence that marital funds or labor were expended during the marriage to make improvements on the residence. The magistrate observed that the parties reduced the mortgage by $56,934.71 during the marriage and ruled that Jennifer was entitled to one-half of the amount that the mortgage principal was paid down during the marriage, or $28,467.36. While the magistrate's decision appears to have treated the marital residence as a mixed asset, the decision did not explicitly so state.

{¶ 14} Jennifer timely objected to the magistrate's refusal to award her a separate, premarital interest in the marital residence and to the manner in which the equity in the marital residence was distributed. The trial court overruled her objection, finding that there was no evidence to support a finding that Jennifer had any premarital interest in the property or a finding that marital funds or labor were expended to improve the residence. Reflecting the magistrate's decision, the trial court's divorce decree held that Jennifer was entitled to receive $28,467.36, one-half of the mortgage pay down. The divorce decree ordered that the remainder of the net proceeds at closing be distributed to Krishan.

{¶ 15} It appears from the language in the magistrate's decision and the trial court's decision on the parties' objections to the magistrate's decision that the down payment and appreciation on the residence were treated as Krishan's separate property and that the mortgage pay down was treated as marital property. However, contrary to its duty to classify assets as marital or nonmarital under R.C. 3105.171(B), the trial court neglected to explicitly determine in the divorce decree whether the marital residence constituted marital or separate property. We are thus unable to reach the merits of Jennifer's first assignment of error. In keeping with this court's decision in *Lynch v. Lynch,* Warren App. No. CA2006-12-145, 2007-Ohio-7083, 2007 WL 4554943, we must reverse the trial court's decision as it pertains to the distribution of the equity in the marital residence and remand for the trial court to make the appropriate findings. Id. at ¶ 10-11 (reversing a trial court's decision where, among other things, the divorce decree failed to explicitly classify the marital residence as marital or separate property).

{¶ 16} Jennifer's first assignment of error is sustained.

{¶ 17} Assignment of Error No. 2:

{¶ 18} "The trial court erred in excluding extrinsic evidence of a prior inconsistent statement by appellee."

{¶ 19} Jennifer contends that the trial court erroneously excluded a recorded statement offered to impeach Krishan. The parties disputed whether or not the Subaru was a birthday gift from Krishan to Jennifer. Jennifer sought to admit a recording in which Krishan allegedly admitted that the Subaru was a gift in order to impeach Krishan after he testified to the contrary.

{¶ 20} The admission or exclusion of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon a showing of an abuse of discretion. *Weisbecker v. Weisbecker,* Butler App. No. CA2005-10-421, 2006-Ohio-5840, 2006 WL 3187157, ¶ 20.

{¶ 21} The introduction of a witness's prior inconsistent statements is governed by Evid.R. 613(B), which permits the admission of extrinsic evidence of a prior inconsistent statement by a witness when two conditions are met. First, if the statement is offered solely for impeachment purposes, a proper foundation must be laid, and the witness must be afforded an opportunity to explain or deny the statement. Id. Second, the subject matter of the statement must be a fact that is of consequence to the determination of the action other than the credibility of a witness, a fact that may be shown by extrinsic evidence under certain other rules of evidence, or a fact that may be shown by extrinsic evidence under the common law of impeachment. Id.

{¶ 22} After the magistrate excluded the recording, Jennifer was permitted to proffer the evidence. The trial transcript reveals the following transcription of the recording:

{¶ 23} "MALE VOICE: You think I'm (inaudible) money. I've told you for years it takes everything we've got just to deal with (inaudible). That breaks my heart when you just take, like I give you this nice car as a gift and you just say, 'Well, he (inaudible) just gave that to me years ago.'"

{¶ 24} We find that the trial court did not abuse its discretion in excluding the recording. It is impossible to discern from the above-quoted transcription whether the Subaru is the subject of the conversation. In addition, there is nothing in the recording placing the statements in any sort of time frame. It is thus impossible to verify whether the conversation took place in 1997 or 2007. Without these crucial pieces of information, the recording was of no assistance to the trial court.

{¶ 25} Jennifer's second assignment of error is overruled.

{¶ 26} Cross–Assignment of Error No. 1:

{¶ 27} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that appellant/cross-appellee was not financially responsible for the damage to 5 Maple Leaf Drive."

{¶ 28} Krishan insists that the trial court erred in failing to require Jennifer to pay the entire cost of repairing the marital residence for the damage caused by her animal rescue hobby. He insists that Jennifer's hobby is solely responsible for the deterioration of the marital residence, inside and out.

{¶ 29} According to the record, Jennifer used the marital residence as a wildlife refuge. Krishan testified that at the time of trial, the residence housed approximately 25 to 40 geese, 60 to 80 ducks, 5 to 10 songbirds, and 20 to 30 turtles. Jennifer offered a more conservative estimate, testifying that there were 15 geese, 2 swans, 13 ducks, and 12 turtles on the property at the time of trial.

Krishan stated that the animals destroyed the grass on the lawn and that they tracked dirt and feces inside the house.

{¶ 30} Although Krishan's assignment of error generally objects to the trial court's failure to hold Jennifer financially responsible for the deterioration of the marital residence, his brief specifically challenges only the trial court's order stating that he may pay to resod and mulch the lawn at his own expense. The previous order was mandatory, requiring Krishan to repair the lawn. The trial court has since rescinded the mandatory order, permitting Krishan to repair the lawn at his own expense if he so chooses.

{¶ 31} We observe that the record contains no evidence regarding the diminution in value suffered by the property as a result of the damaged lawn. Presumably, such evidence will not be definitively available until after the property is sold. We also note that Krishan testified that he "let [Jennifer] do what she wanted to do" to avoid conflict in the marriage and because she was passionate about her rescue operation. In addition, as stated, the parties built a shed and installed a pond on the property for the wildlife. Although Krishan may now regret his acquiescence, the fact remains that he permitted the animals to inhabit the property while he resided in the marital residence. While a division of the cost to repair the lawn may have been a reasonable request, we cannot say that the trial court abused its discretion in refusing to hold Jennifer financially responsible for the damage to the lawn.

{¶ 32} Krishan's first cross-assignment of error is overruled.

{¶ 33} Cross–Assignment of Error No. 2:

{¶ 34} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that he must pay and hold appellant/cross-appellee harmless for real estate taxes and insurance for 5 Maple Leaf Drive."

{¶ 35} Krishan maintains that he should not be made to pay the real estate taxes and insurance on the marital property because Jennifer exclusively occupies the residence, because she has not made the residence more attractive to potential buyers by removing the wildlife, and because his take-home pay exceeds his monthly living expenses by only $489.

{¶ 36} Contrary to Krishan's assertions, Jennifer presented evidence of labor she performed to clean up the marital residence and expenditures she incurred for repairs to the residence. In addition, both parties presented evidence pertaining to their current income and living expenses. The court was informed of the earning abilities of the parties, Jennifer's part-time employment status throughout the marriage, and Jennifer's difficulty in finding full-time employment in her field of study. Considering the evidence in the record, the trial court's

decision requiring Krishan to pay the real estate taxes and insurance for the marital residence was not an abuse of discretion.

{¶ 37} Krishan's second cross-assignment of error is overruled.

{¶ 38} Cross–Assignment of Error No. 3:

{¶ 39} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that labor performed by the parties during the marriage to husband's separate, non-marital real estate made the appreciation of the real estate marital."

{¶ 40} Cross–Assignment of Error No. 4:

{¶ 41} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that 2 Maple Leaf Drive was a mixed asset and that appellant/cross-appellee was entitled to receive 11.3%."

{¶ 42} Because Krishan's third and fourth cross-assignments of error are related, we shall address them together. Krishan argues that the trial court erred in finding that Jennifer was entitled to one-half of the appreciation on the rental property at 2 Maple Leaf Drive and to a percentage of the funds in the bank account into which rental income was deposited.

{¶ 43} The magistrate found that Krishan purchased the rental property in the year 2000 with separate, nonmarital funds. Jennifer does not dispute this conclusion on appeal. The parties stipulated that the rental property was purchased for $54,177 and is now valued at $70,000. The record also reveals that Krishan formed Caltry, L.L.C. to conduct business for the rental property. The rental income was deposited into the Caltry checking account.

{¶ 44} While the trial court acknowledged that Krishan was entitled to the rental property as his separate property, the court awarded Jennifer one-half of the appreciation on the property, or $7,911. The court reasoned that Jennifer was entitled to this amount for labor that she put into the rental property. The court also classified Caltry and its assets as Krishan's separate property, but awarded Jennifer a percentage of the balance in the Caltry bank account due to its conclusion that the rental property was a mixed asset.

{¶ 45} When the efforts of either spouse contribute to the active appreciation of an asset, the increased value is characterized as marital property and subject to division. *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 400–401, 696 N.E.2d 575. Krishan insists that Jennifer merely performed cosmetic work and routine maintenance on the rental property. Krishan, as the party asserting that the appreciation on the rental property was passive and therefore his separate property, retained the burden of proof. *Balser–LeForge v. LeForge*, Clinton App. No. CA2002–12–047, 2003-Ohio-5878, 2003 WL 22470174, ¶ 10.

{¶ 46} As stated, Jennifer did not dispute that Krishan purchased the property with his separate funds. She testified that the property was in very poor condition when Krishan purchased it. The prior residents had left nearly everything behind, including trash. Jennifer stated that she helped clean the rental property and that she and Krishan worked on the property for a year prior to leasing it. She also testified that it was her understanding that the rental property was a project that she and Krishan were undertaking together, in part to increase the value of their nearby marital residence. She contended that because of the labor she put into the property, it was a mixed asset.

{¶ 47} Krishan admitted that the rental property was a foreclosure property that required work. He testified that the labor performed on the rental property included repairs, but was mostly cosmetic. The enhancements included siding and carpet installation. No improvements were made to the property such as room additions or additional structures. Major repairs, according to Krishan, were performed by contractors. Krishan testified that money for the repairs came from a savings account held jointly by him and Jennifer.

{¶ 48} After considering the evidence presented by both parties, the trial court concluded that Jennifer's contributions exceeded routine maintenance. We find that the record supports the trial court's determination that a portion of the rental property and income was marital property. Krishan did not satisfy his burden to prove that the appreciation on the property was passive. According to Krishan's own testimony, the repairs on the rental property were paid for out of a joint savings account. The record supports that the parties expended a significant amount of time and labor renovating the property after it was purchased. The increase in the value of the property was credibly attributed to this renovation, in which Jennifer participated. *Middendorf*, 82 Ohio St.3d at 400–401, 696 N.E.2d 575. The trial court therefore did not abuse its discretion in finding the rental property to be a mixed asset and in awarding Jennifer one-half of the appreciation on the property and a percentage of the Caltry account holding the rental income.

{¶ 49} Krishan's third and fourth cross-assignments of error are overruled.

{¶ 50} Cross–Assignment of Error No. 5:

{¶ 51} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that appellant/cross-appellee was entitled to receive the sum of $11,662.74 from appellee/cross-appellant's IRA."

{¶ 52} Krishan challenges the trial court's awarding of $11,662.74 from his North Side Bank IRA to Jennifer. According to Krishan, the evidence showed that the marital portion of the North Side IRA was $6,746.17. Krishan insists that Jennifer was entitled to one-half of this amount, or $3,373.08.

{¶ 53} In a divorce action, there is no presumption, rebuttable or irrebuttable, that property must be divided equally. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 421 N.E.2d 1293. Rather, the trial court should begin its analysis with a potentially equal division as the starting point. Id. As stated, it is within the discretion of the trial court to distribute marital property either equally or equitably between the parties, depending on the facts and circumstances of each case. See id. See also R.C. 3105.171(C)(1).

{¶ 54} An equitable distribution does not necessarily mean an equal one. See *Cherry*, 66 Ohio St.2d at 355, 20 O.O.3d 318, 421 N.E.2d 1293. When a trial court makes an equitable division of property in a divorce proceeding, R.C. 3105.171(G) requires that the court make written findings of fact to support the determination. This requirement is particularly significant when the division results in an unequal distribution of property. See *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97, 518 N.E.2d 1197.

{¶ 55} The parties stipulated to the following facts: Krishan opened the North Side IRA on April 15, 1987, prior to the parties' marriage. The value of the North Side IRA was $16,716.31 on January 1, 1997; $17,351.26 on December 31, 1997; and $33,200.14 on August 15, 2007. Krishan made two contributions to the North Side IRA during the marriage: $3,000 on March 8, 2004 and $3,000 on April 6, 2005. Krishan's exhibit 2 reveals that the North Side IRA was valued at $33,727.21 as of December 31, 2007. As stated, the parties were married in November 1997. Krishan testified that he moved out of the marital residence in August 2007.

{¶ 56} After performing the calculations, it is evident that the trial court unequally distributed the North Side IRA. The total appreciation through the end of the calendar year the parties were married and cohabiting was $16,375.95 ($33,727.21 minus $17,351.26). At most, then, Jennifer was entitled to one-half of this amount, or $8,187.98. This is prior to factoring in any interest to which Krishan may be entitled on the premarital portion of the North Side IRA. The trial court's award of $11,662.74 to Jennifer resulted in an unequal division of the marital portion of the IRA.

{¶ 57} We note that neither party requested findings of fact or conclusions of law, which could have assisted our review. *Ammon v. Ammon* (Mar. 6, 1989), Clermont App. No. CA88–03–023, 1989 WL 18871, at *7. Based upon the record before us, we are unable to discern how the magistrate reached the $11,662.74 distribution amount awarded to Jennifer. We therefore must reverse the trial court's decision as it pertains to the distribution of the North Side IRA and remand for the trial court to recalculate the proper distribution based upon the evidence in the record, or, if the trial court concludes that an unequal distribution

is warranted, to set forth written findings of fact to support the determination pursuant to R.C. 3105.171(G).

{¶ 58} Krishan's fifth cross-assignment of error is sustained.

{¶ 59} Cross–Assignment of Error No. 6:

{¶ 60} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in ruling that appellee-cross/appellant owed appellant/cross-appellee the sum of $806.92 for repairs to 5 Maple Leaf."

{¶ 61} Krishan avers that he should not be made to reimburse Jennifer for household repairs in the amount of $806.92. Jennifer was required by court order to inform Krishan of any expenses exceeding $150. She admittedly failed to obtain his approval for a number of repairs. Consequently, Krishan maintains, Jennifer is not entitled to reimbursement for those expenses incurred without his assent.

{¶ 62} In an October 26, 2007 decision on the parties' motions for temporary orders, the magistrate stated the following:

{¶ 63} "[I]f subcontractors are to be hired, both parties must be in agreement, and the cost shall be shared equally. * * * [A]ny one-time expense in excess of $150.00 shall require written approval of the other party before being made, or the party making the expenditure shall exclusively bear those costs."

{¶ 64} In the divorce decree, the trial court ordered Krishan to pay Jennifer $806.92, which was one-half of the invoices set forth in Jennifer's exhibits R through W. Exhibits R, R–2, and R–3 were from A & D Hauling in the amounts of $195, $170, and $145, respectively. Jennifer testified that these expenses were incurred for junk removal from the marital residence in December 2007 and January 2008, after Krishan had moved out. The magistrate's October 26, 2007 decision required Jennifer to ensure that the marital residence was clean and in a suitable condition for showing and sale. Jennifer testified that she and Krishan e-mailed one another about hauling away the junk in the house and that Krishan recommended A & D Hauling. She construed this as an agreement that they would split the cost.

{¶ 65} Exhibit S was from Shields Heating & Air in the amount of $203.90. Jennifer testified that this expense was incurred for a furnace repair in January 2008. She called Krishan while the furnace technician was at the house and left him a voicemail to get his permission to split the cost. Although she admittedly did not obtain Krishan's authorization, she went ahead with the repair because it was January, and the temperature was forecasted to drop into the 20s.

{¶ 66} Exhibit T was from Clark Heating & Cooling, Inc. for $89. This expense was incurred for a furnace repair in November 2007. Jennifer testified

that Krishan had been responsible for adding oil for the furnace in the past and that she had had to call a service technician when the furnace ran out of oil.

{¶ 67} Exhibit U was from Cincinnati Door & Opener, Inc. for $341.95. According to Jennifer, the gates to the marital residence no longer operated because Krishan had allegedly disconnected them, changed the codes, and removed the gate battery charger. She had had to call a service technician in August 2007 in order to restore the gates.

{¶ 68} Exhibit V was from Handyman Connection for $230. Jennifer testified that this expense was incurred in August 2007 because the wires in the basement of the marital residence had been disconnected. These wires provided electricity to the shed, pond, and porch.

{¶ 69} Exhibit W was from Snap Heating & Cooling Specialist for $164. Jennifer stated that this expense was incurred when the HVAC system required charging in August 2007.

{¶ 70} We observe that the invoices reflect expenses incurred by Jennifer in connection with cleaning up and repairing the marital residence, which were necessary to fulfill her duty to prepare the house for real estate showings. This responsibility included the junk hauling, gate repairs, and wiring repairs. The remainder of the invoices dealt with the HVAC system, the repair of which appears to have arisen out of necessity. Although we are reluctant to encourage Jennifer's failure to comply with the magistrate's order requiring her to obtain Krishan's approval prior to incurring expenses in excess of $150, we cannot find that the trial court abused its discretion in ordering Krishan to split the costs. Nonetheless, it seems that the magistrate made a mathematical error in calculating the amount Krishan must pay to reimburse Jennifer for one-half of these expenses.

{¶ 71} As stated, the invoices in Jennifer's exhibits R through W contained the following amounts: $195, $170, $145, $203.90, $89, $341.95, $230, and $164, respectively. These items total $1,537.90. One-half of this amount is $768.95.

{¶ 72} The portion of the magistrate's decision allocating these debts cites Jennifer's exhibits R through W and lists the following amounts: $195, $203.90, $89, $341.95, $230, $390, and $164. Each of these amounts matches up with one of the figures contained in exhibits R through W, with the exception of the $390 figure. It is unclear where this amount came from. Consequently, we are unable to discern how the magistrate arrived at its figure of $806.92. On remand, the trial court is instructed to either explain this deviation or to correct the mathematical error.

{¶ 73} Krishan's sixth cross-assignment of error is sustained in part and overruled in part.

{¶ 74} Cross–Assignment of Error No. 7:

{¶ 75} "The trial court erred and/or abused its discretion to the prejudice of appellee/cross-appellant in awarding appellant/cross-appellee spousal support in the amount of $1,000.00 for twenty-eight months."

{¶ 76} Krishan contends that the trial court failed to consider all of the statutory factors in awarding Jennifer spousal support. In view of Jennifer's earning ability, education, and part-time employment status, Krishan insists that Jennifer was voluntarily underemployed and that the trial court should have imputed income to her.

{¶ 77} A trial court may award reasonable spousal support to either party in a divorce action. R.C. 3105.18(B). The court is vested with broad discretion in determining the propriety of a spousal support award. See *Dunn v. Dunn*, Clinton App. No. CA2004–08–020, 2005-Ohio-5477, 2005 WL 2626197, ¶ 15. In making such a determination, a trial court must consider the factors set forth in R.C. 3105.18(C)(1). These factors include each party's income, earning capacity, age, and mental and emotional condition. Other factors include the parties' standard of living, education, assets and liabilities, and the duration of the marriage. In addition to the statutory factors, a trial court is free to consider any other factor it deems relevant and equitable. See R.C. 3105.18(C)(1)(n).

{¶ 78} Again, because neither party requested findings of fact or conclusions of law, we are left with the trial court's decision to determine whether or not the court abused its discretion in awarding spousal support.

{¶ 79} The magistrate's decision specified that it analyzed the evidence in accordance with the statutory factors set forth in R.C. 3105.18(C)(1)(a) through (n). In overruling Krishan's objection to the magistrate's spousal support award, the trial court specifically cited the duration of the marriage, the disparity in income between the parties, and Jennifer's lack of health insurance. The court awarded spousal support to Jennifer in the amount of $1,000 per month for 28 months in order to permit her time to obtain full-time employment and become self-sufficient.

{¶ 80} Krishan admitted at trial that Jennifer never worked full time during the marriage. Jennifer testified that she was seeking full-time employment and had applied for three positions in her field. Jennifer was 37 years old at the time of trial and held a Bachelor of Science degree in General Studies from the University of Cincinnati. At the time of trial, she was employed part time as a registration coordinator at the Cincinnati Nature Center earning $13.25 an hour.

Jennifer stated that there were not many opportunities in her field of work in Cincinnati and that applicants for these positions far outnumbered available positions. She testified that she sought enough spousal support to get her started until she obtained full-time employment and that $1,000 per month would be sufficient.

{¶ 81} At the time of trial, Krishan was 39 years old. He earned a Bachelor of Science degree in Engineering and a Bachelor of Science degree in Computer Engineering from Wright State University. At the time of trial, Krishan was employed full time as an engineer at Ambassador Heat Transfer Company, his father's business, earning $63,000 per year. He testified that he had been employed in his current full-time position since 1993.

{¶ 82} We also observe that Krishan's underemployment argument was addressed by the magistrate in the October 26, 2007 decision on the parties' motions for temporary orders. The decision noted that Jennifer was working at the same place of employment she had been for a considerable period prior to the parties' separation and for a comparable number of hours per week and stated that there was no evidence that Jennifer had refused work that was offered to her.

{¶ 83} Considering the facts in the record, we find that the trial court did not abuse its discretion in fashioning the spousal support award. The court awarded Jennifer an amount that would assist her while she sought to obtain full-time employment in her competitive field and become self-sufficient after having worked part-time for the entirety of the parties' decade-long marriage.

{¶ 84} Krishan's seventh cross-assignment of error is overruled.

{¶ 85} In summary, the portion of the trial court's decision awarding Jennifer one-half of the mortgage pay down on the marital residence is reversed, and the matter is remanded for the trial court to make the appropriate findings regarding the marital residence in accordance with this court's decision in *Lynch,* 2007-Ohio-7083, 2007 WL 4554943.

{¶ 86} The portion of the trial court's decision distributing $11,662.74 to Jennifer from the North Side IRA is reversed. On remand, the court shall either equally distribute the North Side IRA between the parties or, if the court deems an equitable distribution appropriate, make findings of fact in support of the unequal distribution in accordance with R.C. 3105.171(G).

{¶ 87} Finally, the portion of the trial court's decision ordering Krishan to reimburse Jennifer for household repairs in the amount of $806.92 is reversed. While we do not find that the order itself is in error, the amount appears to be

wrongly calculated. On remand, the trial court shall either explain its calculations or correct any mathematical error.

{¶ 88} The remainder of the trial court's decision is affirmed.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BRESSLER, P.J., and RINGLAND, J., concur.