[Cite as *Chaney v. Chaney*, 2022-Ohio-1442.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| CHRISTOPHER CHANEY, | : | |
| Appellant, | : | CASE NO. CA2021-09-087 |
| | : | O P I N I O N |
| - vs - | | 5/2/2022 |
| | : | |
| CHERYL CHANEY, | : | |
| Appellee. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 20DR41732

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle; Schiavone Law Office, and Frank J. Schiavone IV, for appellant.

Law Offices of Andrea N. Hicks, and Andrea N. Hicks; and Andrew P. Meier, for appellee.

**S. POWELL, P.J.**

{¶ 1} Appellant, Christopher Chaney ("Husband"), appeals from the judgment entry and decree of divorce issued by the Warren County Court of Common Pleas, Domestic Relations Decision, granting him a divorce from his now ex-wife, appellee, Cheryl Chaney ("Wife"). For the reasons outlined below, we affirm.

**The Parties**

{¶ 2} On April 21, 2001, Husband and Wife were married in Park City, Utah. There were two children born issue of the marriage, boys, A.C., born on March 27, 2002, and V.C., born on August 11, 2008. From a previous relationship, Husband is the biological father of M.C., a girl, born on April 29, 1992. Also from a previous relationship, Wife is the biological mother of B.C., a girl, born on July 28, 1999. Given their ages, there is no dispute that V.C. is Husband's and Wife's only remaining unemancipated child, whereas A.C., M.C., and B.C. are now all emancipated adults. There is also no dispute that A.C. and B.C. are currently enrolled in college, with A.C. attending school out of state on a full athletic scholarship.

**Facts and Procedural History**

{¶ 3} On February 13, 2020, Husband filed a complaint for divorce from Wife. Shortly thereafter, on February 21, 2020, Wife filed an answer and counterclaim for divorce from Husband. On September 15, 2020, a one-day final divorce hearing was held on the matter before a domestic relations court magistrate. During this hearing, the magistrate heard testimony from just two witnesses: Husband and Wife. On December 2, 2020, the magistrate issued a decision addressing, among other things, the division of Husband's and Wife's property, spousal support, and parental rights and responsibilities of their lone remaining unemancipated child, V.C.

{¶ 4} On December 16, 2020, Husband filed objections to the magistrate's decision. Husband supplemented his objections to the magistrate's decision on March 1, 2021. Upon reviewing Husband's objections, which included an objection to the magistrate's decision ordering Husband to pay Wife spousal support, the trial court issued a decision overruling Husband's objections. The trial court issued this decision on April 6, 2021. On August 20, 2021, the domestic relations court issued a judgment entry and decree of divorce. Husband now appeals from that judgment entry, raising six assignments of error for review.

**Assignment of Error No. 1:**

{¶ 5} THE TRIAL COURT ERRED IN AWARDING TO WIFE EXPENSES INCURRED BY HER AFTER THE TERMINATION OF THE MARRIAGE.

{¶ 6} In his first assignment of error, Husband argues the trial court erred by ordering him to reimburse Wife for certain expenses she incurred after the stipulated de facto termination date of their marriage, March 15, 2020. We disagree.

*Payment for Wife's Expenses from March 15, 2020 to June 12, 2020*

{¶ 7} Husband initially argues the trial court erred by ordering him to reimburse Wife for all of the expenses she incurred between March 15, 2020 to June 12, 2020. To support this claim, Husband argues that it was improper for the trial court to order him to reimburse Wife for these expenses because those were Wife's "expenses paid or incurred by her after the termination of the marriage." However, as the record indicates, Husband and Wife stipulated that Wife could make a claim seeking reimbursement from Husband for expenses that she incurred after the de facto termination date of their marriage.[1] This would include all of the expenses Wife incurred between March 15, 2020 to June 12, 2020.

{¶ 8} The record also indicates that the trial court had previously ordered Husband to continue to "pay all household expenses" as part of its temporary spousal support order. This included Husband paying the parties' mortgage, home utilities, cell phone bills, and "the children's expenses." Specifically, as the trial court stated in that temporary order:

> Effective June 12, 2020, [Husband] shall pay $500.00 per week
> in spousal support to [Wife]. Additionally, [Husband] shall pay
> all household expenses including the mortgage, utilities and cell
> phone bills. Spousal support and the payment of expenses,

---

1. This stipulation was read into the record by Wife's counsel as follows: "We agreed that the date of termination of marriage will be March 15, 2020," but that "each part[y] would… could ask for reimbursement payment, expenses, distribution of bonuses, commission, or [restricted stock units] otherwise agreed upon by the parties." When asked by the trial court if Husband had "any additions or corrections to the agreements" that Wife's counsel had read into the record, Husband's counsel stated, "No, I don't." Husband later testified on cross-examination when asked by Wife's counsel if he had heard, understood, and agreed to the stipulation as it was read into the record, "I did" and "I do."

including the payment of the children's expenses shall be retroactively reviewable.

{¶ 9} When considering the overall circumstances surrounding Husband's and Wife's marriage, as well as the trial court's temporary spousal support order that specifically ordered Husband to pay "all household expenses," we find no error with the trial court's decision ordering Husband to reimburse Wife for all of the expenses she incurred between March 15, 2020 to June 12, 2020. In so holding, we note that Husband had previously paid for all of Wife's expenses that she had incurred during their nearly 20-year marriage. This was because, as the record indicates, Wife had not worked outside of the home since quitting her job and moving to Utah with Husband in 2001. This move to Utah undoubtedly resulted in Wife's loss of income production given the significant marital responsibilities that Wife undertook during the marriage. This move, and subsequent return to Ohio in 2004, also undoubtedly benefitted Husband's career aspirations and earning capacity given Husband's testimony that he was expecting to earn over $250,000 from his employer for the year 2020. Therefore, for these reasons, we find no error in the trial court's decision ordering Husband to reimburse Wife for all of the expenses she incurred between March 15, 2020 to June 12, 2020. Husband's argument otherwise lacks merit.

*Payment for Wife's Expenses from June 12, 2020 to August 28, 2020*

{¶ 10} Husband also argues the trial court erred by ordering him to reimburse Wife for 63% of the expenses she incurred between June 12, 2020 to August 28, 2020. To support this claim, Husband argues that "[n]o rational basis based on any fact can be discerned for the 63/37% division of the second term of assigned expenses." However, as the record indicates, the trial court ordered Husband to reimburse Wife for 63% of the expenses she incurred between June 12, 2020 to August 28, 2020 because that was Husband's percentage of his and Wife's combined income during that two-and-one-half

- 4 -

month period.[2]  Therefore, when again considering the overall circumstances surrounding Husband's and Wife's marriage, as well as Husband's and Wife's respective finances between June 12, 2020 to August 28, 2020, we find no error in the trial court's decision ordering Husband to reimburse Wife for 63% of the expenses she incurred between June 12, 2020 to August 28, 2020.  Husband's argument otherwise lacks merit.

*Payment for Wife's Cell Phone Bill*

{¶ 11} Husband further argues the trial court erred by ordering him to reimburse Wife for payment of her cell phone bill.[3]  This is because, according to Husband, "[t]o the extent the award of expenses for Wife's phone bill, as a separate part of her claim, and again as part of her credit card debt where she paid it, and not applying credit for Husband's payments to one or both, is making Husband pay twice."  That is to say, Husband argues the trial court gave Wife "double-credit" for payment of her cell phone bill, once as a general household expense and again as a separate cell phone expense.  However, when faced with this exact same argument as part of Husband's objections to the magistrate's decision, the trial court found Wife was not getting "double-credit" for payment of her cell phone bill. This is because, as the trial court found, the magistrate had given Husband credit for paying Wife's cell phone bill as of September 1, 2020.  We find no error in the trial court's decision. Therefore, just as the trial court found, Husband's argument alleging the trial court erred by ordering him to reimburse Wife for payment of her cell phone bill lacks merit.

---

2. Wife obtained employment on May 20, 2020 after having not worked full-time outside of the home since March of 2001.  Wife received her first paycheck from her employer on May 30, 2020.  The money Wife received from that paycheck, however, was a nominal amount of $237.40.

3. The record indicates Husband was ordered to reimburse Wife a total of $568.61 for the payment of her cell phone bill for the period beginning on March 30, 2020 to August 28, 2020.  This equates to approximately $113.72 per month for those five months.  Husband was then ordered to pay 63% of Wife's cell phone bill for the time period beginning on September 1, 2020 to December 31, 2020.  Effective January 1, 2021, Wife was ordered to pay her own cell phone.

*Payment for A.C.'s College Expenses*

**{¶ 12}** Husband additionally argues the trial court erred by ordering him to reimburse Wife "for voluntarily paying moving and other expenses" she incurred moving their older, now emancipated adult son, A.C., into his college dorm room.[4]  To support this claim, Husband argues the trial court lacked jurisdiction to order him to reimburse Wife for a portion of those expenses because A.C. is no longer a minor.  However, at the divorce hearing, Husband specifically testified and agreed that it would be appropriate for him to reimburse Wife a portion of the expenses she incurred taking A.C. to college.  Specifically, as Husband testified on cross-examination:

> Q: Do you think it would be appropriate for you to pay a portion of the cost[s] that were incurred by [Wife] for taking [A.C.] to college?
>
> A: Yeah, I do.
>
> Q: And do you feel it was appropriate…
>
> A: Not extravagant costs, but yes.  I do think [A.C.'s] costs and [Wife's], maybe, to take [A.C.] down there.  Yeah.
>
> Q: And what about costs for things that he needed for his dorm, like bedding and towels and stuff like that?
>
> A: Yeah.  Whatever he needs.  Yeah.  I don't know what that is, but I will do what I have to do for him.  Yeah.  I've already done a lot.

**{¶ 13}** Because Husband specifically testified and agreed that it would be appropriate for him to reimburse Wife for a portion of the expenses she incurred taking A.C. to college, the trial court found "the [m]agistrate had every reason to require [Husband] to do as he promised."  We find no error in the trial court's decision.  Therefore, just as the trial

---

4. The record indicates Husband was ordered to reimburse Wife a total of $503.28 for A.C.'s college expenses, which was 63% of the total expenses Wife incurred moving A.C. into his college dorm room during the summer of 2020.

court found when ruling on Husband's objections to the magistrate's decision, we find no merit to Husband's argument alleging the trial court erred by ordering him to reimburse Wife for a portion of the expenses she incurred moving their older, now emancipated adult son, A.C., into his college dorm. Husband's claim otherwise lacks merit.

{¶ 14} For the reasons outlined above, and finding no merit to any of the four arguments Husband raised herein in support of Husband's first assignment of error, Husband's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 15} THE TRIAL COURT ERRED IN DIVIDING THE PARTIES' INTEREST IN THE MARITAL REAL ESTATE.

{¶ 16} In his second assignment of error, Husband argues the trial court erred by rejecting his claim that he had a "pre-marital interest" in the marital home he and Wife purchased in 2004 located in Mason, Warren County, Ohio. We disagree.

{¶ 17} "In divorce proceedings, the Revised Code requires the domestic relations court to determine what constitutes marital property and what constitutes separate property." *Bauer v. Bauer*, 12th Dist. Warren Nos. CA2019-04-033 and CA2019-04-040, 2020-Ohio-425, ¶ 24, citing R.C. 3105.171(B). "Marital property" does not include any separate property. R.C. 3105.171(A)(3)(b). "Marital property" is instead defined by R.C. 3105.171(A)(3)(a)(i) to include:

> [a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.

{¶ 18} "Marital property" is also defined by R.C. 3105.171(A)(3)(a)(ii) to include:

> [a]ll interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.

{¶ 19} "Separate property" is defined by R.C. 3105.171(A)(6)(a)(ii) to mean "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." "Separate property" is also defined by R.C. 3105.171(A)(6)(a)(ii) to mean "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "Thus, when one spouse contributes equity in the parties' marital home and that spouse can trace the equity to his or her pre-marital funds, those funds remain the spouse's separate property." *Jones v. Jones*, 4th Dist. Athens No. 07CA25, 2008-Ohio-2476, ¶ 21, citing *Moore v. Moore*, 12th Dist. Brown No. CA2000-03-006, 2000 Ohio App. LEXIS 5648 (Dec. 4, 2000).

{¶ 20} "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 16, citing *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 9. "'Preponderance of the evidence' means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *Mather v. Hilfinger*, 12th Dist. Warren No. CA2020-12-083, 2021-Ohio-2812, ¶ 16, citing *Eckstein v. Colian*, 7th Dist. Columbiana No. 11 CO 22, 2012-Ohio-4038, ¶ 14. "'The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium.'" *Schwab v. Schwab*, 5th Dist. Stark No. 2019CA00082, 2020-Ohio-560, ¶ 28, quoting *Travelers' Ins. Co. v. Gath*, 118 Ohio St. 257, 261 (1928). "The characterization of the parties' property is a factual inquiry

and will not be reversed where supported by some competent, credible evidence." *Ghai v. Ghai*, 182 Ohio App.3d 479, 2009-Ohio-2449, ¶ 9 (12th Dist.), citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist.1997).

**{¶ 21}** Husband claims the trial court erred by finding he "did not sufficiently trace his separate interest" from the home he and Wife purchased in Utah in 2001 to the purchase of the marital home located in Mason in 2004. However, when considering Husband did not provide the trial court with any documentary evidence to support his claim that he used the money he received from the sale of several pre-marital assets, plus an additional unknown amount of money taken from his separate money market account, to pay the down payment on the home in Utah, we find no error in the trial court's decision. *See, e.g., Petit v. Petit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 50-53 (overruling appellant's argument that he had successfully traced a portion of the funds he and appellee used to purchase the couple's marital home to his separate property where appellant's claim was based on appellant's testimony alone without any supporting documentary evidence).

**{¶ 22}** In reaching this decision, we note that Husband could not even remember the exact amount that he and Wife had paid to purchase the home in Utah in 2001, the total amount of separate property that he supposedly used to pay the down payment for the purchase of the home in Utah, or the amount for which he and Wife sold the home in Utah prior to purchasing the marital home in Mason in 2004. Husband instead testified that he did not "remember exactly" what he and Wife paid for the home in Utah, but that it was somewhere around $390,000 "[g]ive or take a few… a thousand." Husband also testified that he did not have any records indicating the purchase price of the home in Utah, no closing statement from the purchase of the home in Utah, no statement showing where the proceeds from the sale of the home in Utah went, or any records showing where the money put down as a down payment on the home in Mason came from. Therefore, given this lack

of documentary evidence, we find no error in the trial court's decision rejecting Husband's claim that he had a "pre-marital interest" in the marital home he and Wife purchased in 2004 located in Mason. Husband's argument otherwise lacks merit.

{¶ 23} Husband also argues the trial court erred by valuing the marital home located in Mason at $365,000 rather than for a higher figure closer to $380,000 or $400,000. To support this claim, Husband argues the trial court's valuation of the marital home was a "random" figure that was not supported by the evidence. However, as the record indicates, there were two appraisals of the marital home admitted into evidence: Husband's appraisal of the home at $380,000 and Wife's appraisal of the home at $350,000. There was also evidence indicating the marital home would need a new roof within two to three years with an estimated cost of $15,000. Given this evidence, we find it clear that the trial court accepted Husband's appraisal of the home at $380,000, minus the estimated $15,000 in repairs needed to the home's roof, to reach its ultimate decision finding the marital home had a value of $365,000. Therefore, because the trial court's decision valuing the marital home at $365,000 was supported by competent, credible evidence, we find no error in the trial court's decision by valuing the marital home located in Mason at $365,000 rather than for a higher figure closer to $380,000 or $400,000. Husband's argument otherwise lacks merit.

{¶ 24} For the reasons outlined above, and finding no merit to either of the arguments raised by Husband herein in support of his second assignment of error, Husband's second assignment of error lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 25} THE TRIAL COURT ERRED IN DIVIDING THE PARTIES' INTEREST IN STOCK OPTIONS.

{¶ 26} In his third assignment of error, Husband argues the trial court erred by finding

the restricted stock units he was granted from his employer after the parties' de facto termination date of their marriage, March 15, 2020, was not his separate property. Husband, however, provided no documentary evidence to support his claim that he was granted the disputed restricted stock units from his employer prospectively to ensure his continued employment with the company. Given this lack of documentary support, the trial court clearly found Husband's testimony that his employer granted him with the restricted stock units as a motivation for future performance or an incentive for continued employment with the company was not credible. This was well within the trial court's purview as the trier of fact tasked with determining what constitutes the parties' marital and separate property. *Tincher v. Tincher*, 5th Dist. Fairfield No. 2019 CA 00028, 2020-Ohio-3352, ¶ 65 ("[w]hile the characterization of property as separate or marital must be supported by sufficient, credible evidence, the appellate court is not the trier of fact"). In so holding, we note that, despite Husband's claims, "the unvested status of the restricted stock units does not otherwise deprive the asset of its character as marital property." *Anderson v. Anderson*, 12th Dist. Warren No. CA2019-10-118, 2020-Ohio-4415, ¶ 11. Therefore, finding no merit to the any of the arguments raised by Husband herein, Husband's third assignment of error lacks merit and is overruled.

**Assignment of Error No. 4:**

{¶ 27} THE TRIAL COURT ERRED IN NOT ACCOUNTING FOR WIFE'S CONVERSION OF HUSBAND'S PAYCHECK.

{¶ 28} In his fourth assignment of error, Husband argues the domestic relations court erred by not ordering Wife to reimburse him, or, at the very least, provide him with an offset for the money he claims Wife improperly removed from their joint bank account after the stipulated de facto termination date of their marriage, March 15, 2020. This is because, according to Husband, the money that Wife removed was his paycheck that he received

after the parties' stipulated de facto termination date of their marriage, thereby rendering that money his separate property.[5] However, although the record indicates Husband *received* his paycheck from his employer after the parties' stipulated de facto termination date of their marriage, the money Husband claims Wife improperly removed from their joint bank account was *earned* by Husband prior to that date, thus making those funds marital property and not, as Husband claims, his separate property.[6] Therefore, Husband's argument alleging the trial court erred by not ordering Wife to reimburse him, or, at the very least, provide him with an offset for money he claims was his separate property that Wife improperly removed from their joint bank account, lacks merit. Accordingly, finding no merit to any of the arguments raised by Husband herein, Husband's fourth assignment of error lacks merit and is overruled.

**Assignment of Error No. 5:**

{¶ 29} THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT.

{¶ 30} In his fifth assignment of error, Husband argues the trial court erred by awarding Wife with such a "considerable" spousal support award when accounting for Wife's "understated income" and "historical earnings," Husband's "overall financial responsibility and contribution," and "the fact of [Wife] literally being a 'millionaire' after this divorce." We disagree.

{¶ 31} "A trial court has broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and

---

5. We note that Husband is not challenging the manner in which the trial court ultimately divided this property, but only the trial court's classification of this property as separate or marital.

6. The record indicates the paycheck Husband claims was his separate property was deposited in the joint back account on March 20, 2020, five days after the parties' stipulated de facto termination date of their marriage. However, although deposited after the de facto termination date of their marriage, the record indicates that paycheck represented the money Husband earned during the marriage for the two-week pay period beginning on March 1, 2020 and ending on March 14, 2020.

circumstances of each case." *Spillane v. Spillane*, 12th Dist. Butler No. CA2019-12-206, 2020-Ohio-5052, ¶ 12, citing *Curry v. Curry*, 12th Dist. Butler No. CA2016-07-136, 2017-Ohio-8127, ¶ 15. Because of this, "an appellate court will not disturb a spousal support decision absent an abuse of discretion." *Delgado v. Delgado*, 12th Dist. Clermont No. CA2018-03-007, 2018-Ohio-4938, ¶ 22, citing *Hutchinson v. Hutchinson*, 12th Dist. Clermont No. CA2009-03-018, 2010-Ohio-597, ¶ 16; *Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 15 ("a reviewing court will not disturb a spousal support award on appeal absent an abuse of discretion"). "An abuse of discretion is more than an error of law or judgment, it is an attitude of the court that is unreasonable, arbitrary, and unconscionable." *Rigby v. Rigby*, 12th Dist. Brown No. CA2020-07-005, 2021-Ohio-271, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 32} "A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Gaffney v. Gaffney*, 12th Dist. Butler No. CA2019-10-172, 2020-Ohio-5051, ¶ 10, citing *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 8. Pursuant to that statute, the trial court is required to consider certain enumerated factors including, but not limited to, the income of the parties, earning abilities of the parties, ages, duration of marriage, standard of living, education of parties, as well as assets and liabilities of the parties. *McCarty v. McCarty*, 12th Dist. Warren Nos. CA2016-07-055 and CA2016-07-056, 2017-Ohio-5852, ¶ 17. "The trial court need not comment on each factor individually, but rather, 'must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.'" *Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 17, quoting *Campbell v. Campbell*, 12th Dist. Warren No. CA2009-04-039, 2009-Ohio-6238, ¶ 22. "A reviewing court will presume each factor was considered, absent evidence to the contrary." *Davis v. Davis,* 12th Dist. Butler No.

CA2018-01-018, 2018-Ohio-4935, ¶ 9, citing *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 42.

{¶ 33} After a thorough review of the record, we find no error in the trial court's decision ordering Husband to pay Wife spousal support. The same is true as it relates to the amount and duration of spousal support award the trial court ordered Husband to pay to Wife. This is because, despite Husband's claims, the record clearly indicates the trial court based its spousal support award on a careful and full balancing of the relevant factors set forth in R.C. 3105.18(C)(1). This includes the length of the parties' nearly 20-year marriage, the great disparity in the parties' income, as well as Wife's loss of income production resulting from the marital responsibilities Wife undertook during the marriage. This also includes the fact that, following their divorce, *both* Husband *and* Wife will receive a significant amount of assets without incurring any amount of debt.[7] Therefore, given totality of the circumstances, we agree with the trial court's decision finding "the reality is that [Husband] is also leaving the marriage with a substantial amount of money, and on top of that also has a much greater earning capacity than [Wife] – thus making this a spousal support case." Accordingly, finding no merit to any of the arguments advanced by Husband herein, Husband's fifth assignment of error lacks merit and is overruled.

**Assignment of Error No. 6:**

{¶ 34} THE TRIAL COURT ERRED IN ALLOCATING PARENTING RIGHTS.

{¶ 35} In his sixth assignment of error, Husband claims the trial court erred in its allocation of parental rights and responsibilities related to his and Wife's only remaining unemancipated child, V.C. To support this claim, Husband argues the evidence does not

---

7. The record indicates that, following their divorce, Husband will retain over $1,400,000 in retirement/investment accounts and over 3,000 shares of stock, stock options, and restricted stock units, whereas Wife will have a pension, over $650,000 in retirement/investment accounts, and over 3,000 shares of stock, stock options, and restricted stock units

support the trial court's decision denying him shared parenting or, if nothing else, expanded parenting time beyond that which is set forth in the trial court's standard parenting time schedule. We disagree.

{¶ 36} "R.C. 3109.04 governs the award of parental rights and responsibilities." *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144, ¶ 21. In making this determination, the primary concern is the best interest of the child. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. To determine what is in the best interest of a child, R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to, (1) the wishes of the parents; (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; (3) the child's adjustment to home, school, and community; (4) the mental and physical health of all persons involved; and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14. "[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances." *Suess v. Suess*, 12th Dist. Warren Nos. CA96-01-006 and CA96-01-008, 1996 Ohio App. LEXIS 4400, *6 (Oct. 7, 1996).

{¶ 37} When determining whether shared parenting is in a child's best interest, the trial court must consider the additional factors set forth in R.C. 3109.04(F)(2). *Adkins v. Adkins*, 12th Dist. Butler No. CA2016-12-227, 2017-Ohio-8636, ¶ 11. These factors are (1) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history or potential for abuse; (4) the

geographic proximity of the parents to one another; (5) and the recommendation of the guardian ad litem, if the child has a guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21. An appellate court reviews a trial court's custody determination for an abuse of discretion. *In re S.K.*, 12th Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. As noted above, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore*, 5 Ohio St.3d at 219.

**{¶ 38}** After thorough review of the record, we find no error in the trial court's decision denying Husband's request for shared parenting. We also find no error in the trial court's denying Husband's request for any additional parenting time above the trial court's standard parenting time schedule. This is because, as the record indicates, there are significant concerns that Husband would be unwilling and/or unable to communicate with Wife, the parent who had been V.C.'s primary caregiver since V.C.'s birth, regarding V.C.'s schedule and other needs following the divorce. The record indicates that these concerns were justified given the fact that V.C. missed one of his basketball games due to Husband ignoring Wife's repeated attempts to contact Husband via e-mail and text message regarding V.C. during the pendency of this case.

**{¶ 39}** The record also indicates that there are real concerns Husband would not encourage V.C.'s sharing of love, affection, and contact with Wife after Husband's and Wife's divorce was finalized. This is evidenced by the fact Wife heard Husband making derogatory comments about her to V.C., i.e., Husband referring to Wife as a "witch." This is also evidenced by the fact Husband admittedly ignored and ostracized B.C., Wife's child from a previous relationship whom Husband testified he raised as if she were his own since

B.C. was one year old, after B.C. "took [Wife's] side" in the divorce. Because of this, we agree with the trial court's finding that, if Husband's negative feelings towards Wife affect him this strongly, there is a good chance Husband "will behave this way towards [Wife] in front of [V.C.], if he has not already." Therefore, when considering this evidence, and when taking into account the trial court interviewed the then 12-year-old V.C. to determine his wishes, we find no error in the trial court's allocation of parental rights and responsibilities as it relates to Husband's and Wife's only remaining unemancipated child, V.C. Accordingly, finding no merit to any of Husband's arguments raised herein, Husband's sixth assignment of error lacks merit and is overruled.

{¶ 40} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.